54  463
122  346.

54  463
d128  128

[ No. 6,284. ]

HARRIS & JACOBY v. HILLEGASS, ADM'R, ET AL.

PARTNERSHIP. — Hillegass, (defendant's intestate) at Philadelphia, in 1849 —being about to start for California—entered into a written contract with the plaintiffs, then his partners, under which they were to have a certain proportion of the proceeds of his mining and other business, after first deducting $1,500 advanced by the firm: *Held*, that the contract created a partnership; there being both a community of interest in the original capital and in the profit and loss.

ID.—STALE DEMANDS—PLEADING—DEMURRER.—H. came to California, and died here in 1876, leaving property of large value.   In an action for an accounting brought against his administrator—the complaint alleging that the partnership was never dissolved until the death of H., but also alleging, and attempting to excuse the fact, that no demand had ever been made for an accounting in the life-time of H: *Held*, upon demurrer to the complaint— without deciding whether in any case an objection that the demand is stale can be taken by general demurrer—that in this case, in view of the allegation that the partnership was never dissolved, the objection did not lie ; although the other facts stated might tend strongly to show, or *prima facie* might even show, that in point of fact the partnership had been dissolved long before the date alleged.

PLEADING—PROBATIVE AND ULTIMATE FACTS.—Even where a statement of *evidentiary* facts, if admitted to be true, would establish *prima facie* an ultimate or pleadable fact, they cannot be substituted in a pleading for an allegation of the fact to be put in issue.

APPEAL from a judgment for the defendant, on a demurrer to the complaint, in the Third District Court, County of Alameda.   McKEE, J.

· The facts are stated in the opinion.

*Pringle & Hayne*, for Appellants.

I. Thè operations under the contract were partnership business of Harris, Jacoby & Hillegass. (*Duryea* v. *Burt*, 28 Cal. 577 ; Story on Part. § 18 *et seq; Brigham* v. *Dana*, 29 Vt. 1 ; *Johnson* v. *Devereul*, 32 Id. 619 ; *Ludlow* v. *Cooper*, 4 Ohio St. 1 ; *Scott* v. *Clark*, 1 Id. 382 ; *Manhattan Brass and Man. Co.* v. *Sears*, 45 N. Y. 798 ; *Hills* v. *Baily*, 27 Vt. 548 ; *Porter* v. *Moses*, 1 R. I. 430.)

II. If the plaintiff's claim is not barred by the statute, the Court cannot refuse relief on account of the lapse of time. (*Lord* v. *Morris*, 18 Cal. 482 ; *Boyd* v. *Blankman*, 29 Id. 19.)

Our Code justifies no presumption that would reach this case. (C. C. P. § 1969.) Presumptions, even where properly invoked, are rebuttable, and for the jury. (*Potter* v. *Titcomb*, 7 Greenleaf, 315 ; *Nichols* v. *Aylor*, 7 Leigh, 557 ; *Colvin* v. *Warford*, 20 Md. 395 ; *Foulk* v. *Brown*, 2 Watts, 215 ; *Levers* v. *Van Buskirk*, Watts & Serg. 7 ; *Green* v. *Fonbene*, 2 La. An. 958 ; *Nieto* v. *Carpenter*, 21 Cal. 489 ; Best on Presumptions, p. 22.)

*Sidney V. Smith & Son*, for Respondents.

I. The contract did not create a partnership. (*Smith* v. *Garth*, 32 Ala. 368.)

II. The Statute of Limitations has run. It was incumbent on plaintiffs to make a demand within a reasonable time, and their failure to do so for five years is equivalent to a failure to sue for the same length of time on a cause of action which has actually accrued. (*Stafford* v. *Richardson*, 15 Wend. 305 ; *Chalfin* v. *Malone*, 9 B. & M. 498 ; *McDowell* v. *Branch Bank*, 20 Ala. 318 ; *McDowell* v. *Potter*, 8 Pa. St. 191.)

III. It is a stale demand. (*Codman* v. *Rogers*, 10 Pick. 118 ; *Beckford* v. *Wade*, 17 Ves. 97 ; *McKnight* v. *Taylor*, 1 How. 168 ; *Hawkins* v. *Chapman*, 36 Md. 101.)

IV. The equitable defense of stale demand can be raised by demurrer. (*Kingsland* v. *Roberts*, 2 Paige, 193 ; *Sleeman* v. *Wilson*, L. R. 13 Eq. 43 ; *Bertine* v. *Varian*, 1 Edw. Ch. 347.

Department No. 1, McKINSTRY, J.:

The complaint alleges that on the 26th of June, 1849, the plaintiffs and one William Hillegass, now deceased, (the administratrix of whose estate and whose heirs are the parties defendant) were copartners, with equal interests, doing business in Philadelphia, Pennsylvania; that on that day the firm sent Hillegass to California and furnished him with the sum of $1,500 to defray his traveling expenses, "and to enable him to engage in digging gold, and trading generally in said State on behalf of said firm "; that in connection therewith Hillegass made and executed the agreement following :

"Know all men by these presents : That I, Wm. Hillegass, of the city of Philadelphia, State of Pennsylvania, about starting to California to dig gold, do firmly, truly, and sincerely promise with Wm. C. Harris, of the city of Philadelphia, State of Pennsylvania, and Geo. L. Jacoby, of Sunnytown, Montgomery County, Pennsylvania, jointly, half the proceeds of my diggings and trading, or in whatever manner I obtain gold metal, etc.; that is, after $1,500 are 'deducted, the amount loaned from the firm of Jacoby, Harris & Hillegass : should my diggings, tradings, etc., not amount to $10,000, then the aforesaid Wm. C. Harris and G. L. Jacoby, jointly, get one-third of the proceeds only; but should he get more than $10,000, then, as above stated, Wm. C. Harris and Geo. L. Jacoby are to receive, jointly, one-half of the proceeds.

" Witness my hand and seal the 26th day of June, 1849.

"WM. HILLEGASS. [Seal.]

"Witness present, J. E. SHULTZ ";

that thereupon the firm settled its business in Philadelphia and discontinued the same therein ; that in 1849 deceased came to California, and by and with the money aforesaid engaged in different kinds of labor, trade, and business in California, under and in pursuance of said contract on behalf of said firm, and continued so to engage until his death ; that after the said 26th of June, 1849, and under and in pursuance of said contract, Wm. Hillegass aforesaid acquired, by and with the money aforesaid, large sums of gold, greatly exceeding $10,000, and pur-

chased therewith and acquired by and with the aid of the said $1,500, and by his trading on behalf of said firm, the following real and personal property. (Descriptions of the property follow, being descriptions by metes and bounds of a large number of separate lots or parcels of land, and descriptions of stocks in certain mining corporations, and of other personalty.

The complaint further alleges that all of the property has passed into the hands of *Marie* Hillegass, administratrix.

The plaintiffs further allege, that all the property of any kind of which the said Hillegass was seized or possessed at the time of his death, was obtained and acquired by the said deceased under and in pursuance of the said contract, as partnership property, and in trust for the several members of the said firm as aforesaid; and the plaintiffs allege that the said William Hillegass, after he came to the State of California as aforesaid, never returned to the said City of Philadelphia: that he never accounted with the plaintiffs, nor with either of them, of and concerning what he had obtained and acquired in the State of California as aforesaid, and never gave nor delivered to the plaintiffs, nor to either of them, any part thereof, and never returned the sum of $1,500, nor any part thereof, and never accounted for the use thereof; that all of the said property was acquired and obtained as partnership property as aforesaid, and held by said Hillegass, in trust, for the joint benefit of the said Hillegass and of the plaintiffs, in the proportions in said contract expressed; that the said property is of the value of more than $10,000, to wit, of the value of $185,000, or thereabouts, and the plaintiffs are entitled to one-half part thereof; that the plaintiffs have no knowledge or information whether the said Hillegass acquired any other property under the said contract than what is hereinbefore described. And the plaintiffs allege, on information and belief, and charge the fact to be, that for several years after the arrival of said Hillegass in the State of California, the results of the labor and trading of the said Hillegass were small, and of little value; that thereafter, the same gradually accumulated by reinvestments, and gradually increased in value; that a division and distribution of the same among the members of the firm before such accumulation and

increase would have been injurious and destructive as well to the interests of the said Hillegass as to the interests of the plaintiffs; and that the said Hillegass, during his lifetime, from time to time, stated to the plaintiffs by letters from the State of California, that he would return to the said city of Philadelphia; that the plaintiffs having great trust and confidence in the said Hillegass, and expecting his return to the said city of Philadelphia, did not, for the reasons aforesaid, interrupt his labor and trading, nor require a discontinuance of the said partnership business, or a division of the said property, so long as the said Hillegass continued to carry on the said business in the State of California, and did not, during the lifetime of said Hillegass, demand any part of the said property, nor any accounting thereof; that the said Hillegass never dissolved the said partnership, nor repudiated the said trust, *and the same are in full force and virtue.* And the plaintiffs allege that the said William Hillegass died in said County of Alameda, on the 20th day of March, 1876, being a resident of said county at the time of his death."

This is followed by averments that the defendants are the heirs-at-law of William Hillegass, who died intestate; that defendant *Marie* was duly appointed and qualified as administratrix, who caused the proper notice to creditors to be published, and that the claim of plaintiffs was duly presented, and that the claim was rejected by the administratrix.

The prayer is for a judgment decreeing that the said William Hillegass acquired and obtained all the real and personal property described on joint and partnership account, and that plaintiffs are entitled to one-half, and for an accounting, etc.

The defendants demur, on the grounds that the complaint does not state facts sufficient to constitute a cause of action; that the cause of action is barred by the provisions of certain sections of the Code of Civil Procedure, and that the complaint is *ambiguous.*

The agreement of June 26th, 1849, created a partnership between the plaintiffs and William Hillegass. In a contract of partnership the various covenants adapted to the circumstances of the particular case are entirely the subject of stipulation be-

tween the parties to it, where there is no contravention of some rule of law. (Story, § 23, citing Gow on Part.) Here, then, was both a community of interest in the original capital, and in the profit and loss. The $1,500 were advanced by the three parties to the contract, or from a fund in which the three were jointly interested, and, by the terms of the agreement, each of the three was to share in the losses, *at least* so far as the losses should constitute a charge upon, and diminution and deduction from, the profits. It is in this qualified sense that a participation in losses is requisite to constitute a partnership *inter sese.* (Story on Part. § 21.) The $1,500 were to be returned *only* out of the profits. This presents a marked distinction between the agreement recited in the complaint and the *receipts* construed by the Supreme Court of Alabama, in the case relied upon by respondent's counsel. (*Smith* v. *Garth*, 32 Ala. 368.) There all of the receipts but one contained an absolute promise to pay the money loaned, with interest, in twelve months. The other receipt read: "April 18th, 1843. Received of Jesse W. Garth $400, which I am to invest in lands at Lebanon; and he is to be repaid his money and interest back, and the profits are to be divided."

It was said by the Court that the *receipts* " disclosed a purpose and intent to repay the money *at all events* " (p. 373). And it was further said: " If it had been stipulated that *Garth* should be repaid the money advanced *out of the proceeds of the land when sold*, or out of any *partnership or joint effects*, he would then have been involved in the risk of the adventure " (p. 374). Here the plaintiffs were to receive a certain portion of "the proceeds (net profits) of the diggings and trading," "after $1,500 are deducted" out of such proceeds. The mere use of the words "*loaned* from the firm of Jacoby, Harris & Hillegass " does not overthrow the manifest intent of the parties as derived from the instrument as a whole.

The complaint referred to in *Wheeler* v. *Farmer*, cited by respondent, (38 Cal. 203) contained none of the elements of a partnership contract.

It is insisted by respondents that the claim of the plaintiffs is

a *stale demand*, which will not be entertained by a Court of Equity.

In considering this point, we shall assume—without so deciding—that when it appears by the allegations of the complaint that the demand is *stale*, the objection may be taken under the general demurrer that the complaint does not contain facts sufficient to constitute a cause of action.

It is also urged that equity has refused relief on the ground of laches in cases of *partnership accounts*. However correct this statement, the cases cited in support of it have no application to the facts of the present. *Adams* v. *Taylor*, 14 Ark. 62, was a bill filed for an accounting eight years after a *dissolution* of the partnership; *Ray* v. *Bogart*, 2 Johns. Cas. 438, was a like suit brought *twenty years* after a dissolution by the death of one of the partners. In *Atwater* v. *Fowler*, 1 Edw. Ch. 417, it was held that silence by one of two partners in a *single partnership transaction*, for thirteen years after receiving an account from the other partner, was *an acquiescence* in the account. *Tatham* v. *Williams*, 3 Hare, 159, does not seem to have any bearing upon the precise question; and *Harcourt* v. *White*, (28 Beav. 311), did not involve any partnership account. *Codman* v. *Rogers*, (10 Pick. 118), was a case where the executor of a deceased partner, having had a partial settlement with the surviving partner, lay by for seventeen years, and until after the death of the surviving partner, before taking any legal proceedings.

In all of the cases above referred to, the *delay* to demand an accounting occurred after the dissolution of the partnership by the death of a partner or otherwise.

The complaint before us alleges " that the said Hillegass never dissolved the said partnership nor repudiated the said trust—*and the same are in full force and virtue*."

In order to apply the doctrine of *stale demands* to this case, it devolved upon the demurrant to point out allegations in the complaint which, taken as true, show that the foregoing statement is *not* true, but that the partnership was in fact dissolved at a date so long antecedent to the filing of the complaint, as that the plaintiffs' claim for an accounting had become *stale*.

There is no averment in the complaint that the partnership was dissolved prior to the death of William Hillegass, and there is a very clear distinction between such an averment and the recital of evidentiary facts which may have a tendency to establish such dissolution. The statements in the complaint, referred to as showing a dissolution prior to the death of Hillegass, belong to the class of statements of *evidentiary* as distinguished from *ultimate* facts. Even where such statements, if admitted to be true, would establish *prima facie* an ultimate or pleadable fact, they cannot be substituted in a complaint or answer for an allegation of the fact to be put in issue. If there had been no averment of the death of William Hillegass, it is plain that plaintiffs could not have relied upon the statements referred to as the equivalent of an allegation that the partnership had been dissolved, because the facts stated *might* have occurred and the partnership still continue. Nor can the statements of probative facts be given any greater effect, because they are relied upon by defendants as *admissions* on the part of the plaintiffs; they are simply admissions of facts tending to prove, but not conclusively proving, another fact. Although the circumstances alleged might be considered by the Court (or by a jury) as tending *very strongly* to establish a dissolution or abandonment of the partnership long prior to that alleged in the complaint, their effect might be entirely overcome by the proof of other circumstances tending to show the continuance of the partnership, and, even without evidence of such other circumstances, we cannot declare, as matter of law, that those alleged *could not possibly have coexisted* with the continuation of the partnership.

Judgment reversed and cause remanded, with directions to the Court below to overrule the defendants' demurrer to plaintiffs' complaint.

MORRISON, C. J., and ROSS, J., concurred.