By the bill filed herein the complainants seek an injunction against the mayor and chief of police of the City of Wildwood, New Jersey, and their respective subordinates, from interfering or molesting the complainants in the hawking and peddling of merchandise in the City of Wildwood. *Page 519 
Upon the filing of the bill of complaint an ad interim
restraint and an order to show cause why a preliminary restraint should not be granted was allowed. The matter now comes before this court upon the return of said order to show cause.
The facts as elicited by the bill of complaint and substantiating affidavits demonstrate that: The complainants are all veterans of World War II and each of them hold a hawker's and peddler's license issued by the clerk of Atlantic County, pursuant to the provisions of R.S. 45:24-9, as amended. The said complainants hawked and peddled ice cream upon the beach at Wildwood between August 19th, 1947, and August 23d 1947. All of the complainants were harassed by police officers and lifeguards of the City of Wildwood in connection with said hawking and peddling in that they were all physically driven off of the beach, and by other physical acts interfering with their vending of ice cream. Some of them were taken to the city hall with the advice that they either were arrested or were about to be arrested for violation of a city ordinance which prohibited hawking or peddling on the beach. With the exception of one of said complainants, however, no complaints were made or warrants issued. The complainants allege that the defendants were acting arbitrarily, without complaint, warrant or other process of law, and that they would be irreparably damaged by such interference with the legal conduct of their business.
The defendants admit the above course of conduct but allege that their reason for so preventing complainants from hawking and peddling on the beach arose under the provisions of Ordinance No. 422 of the City of Wildwood, which provides in part as follows:
"Section 6. That licenses issued to peddle goods, wares, merchandise or any articles shall not authorize or permit such peddling on the boardwalk, the approaches thereto or upon any platform or building adjacent to said boardwalk, nor on the beach. All peddling upon the same is hereby expressly prohibited."
They further set forth that: There is no general prohibition against hawking or peddling by veterans of World War *Page 520 
II within the municipal boundaries of the City of Wildwood but that, as a matter of fact, such hawking and peddling is permitted. The only restriction against hawking and peddling is within the confines of the beachfront park, laid out under statutory authority and by virtue of Ordinance No. 320 of the City of Wildwood, and that this prohibition applies to all hawkers and peddlers whether they be veterans or non-veterans.
The reason for such prohibition finds its foundation in a desire to protect the health and safety of the public frequenting the beach, which health and safety would otherwise be jeopardized by the accumulation of trash, litter, uneaten food and by the possible presence of broken bottles. It is to be noted, however, that the restriction against hawking or peddling is not limited to foodstuffs but would be as applicable to balloons or laces.
The application for this injunction, of course, does not apply to any restraint against the City of Wildwood from proceeding in a legal manner by complaint, warrant, arrest, or other due process of law under the above referred to Ordinance No. 422, but does not apply to the extra-legal or illegal activities of the law-enforcing officers in forcing the complainants off of the beachfront park and thus interfering with their business.
The defendants have conceded that the Court of Chancery has full and complete jurisdiction to prevent by injunction the destruction of property rights by reason of the acts of municipal representatives which are unlawful or in excess of their authority, but argue that the complainants have no legal right to sell ice cream on the public beach.
The power of the Court of Chancery to restrain illegal interference with legitimate business by peace officers under the guise of enforcing the law is indisputable. See Iannella v.Piscataway Township, 138 N.J. Eq. 598; 49 Atl. Rep. 2d491. Cases in which this question has arisen are generally concerned with an alleged violation of the criminal law and an attempt to prevent such violation by methods other than those which might be classed as due process. An examination of these cases discloses that although the Court of *Page 521 
Chancery will ordinarily not interfere with the enforcement of the criminal law of this state, this court will enjoin interference with the conduct of business by physical force upon the mere claim that offenses against the criminal law are being conducted during the operation of such business, particularly where the law-enforcing officers fail or refuse to properly arrest and charge the alleged violators in accordance with the established law. Public Welfare Pictures Corp. v. Brennan,100 N.J. Eq. 132; 134 Atl. Rep. 868; Brex v. Smith, 104 N.J. Eq. 386; 146 Atl. Rep. 34; Ruty v. Huelsenbeck, 109 N.J. Eq. 273;156 Atl. Rep. 922; Dell Publishing Co. v. Beggans, 110 N.J. Eq. 72; 158 Atl. Rep. 765; Miller v. Atlantic City, 111 N.J. Eq. 260; 162 Atl. Rep. 143; Sterling Distributors, Inc., v. Keenan
(Chancery Docket 139 p. 584, an unreported decision of Vice-Chancellor Bigelow, January 10th, 1944); Pure Mint Co. v.LaBarre, 96 N.J. Eq. 186; 125 Atl. Rep. 105; Zaft v. Milton,96 N.J. Eq. 576; 126 Atl. Rep. 29; Levison v. David, 106 N.J. Eq. 514; 151 Atl. Rep. 388; Publix New Jersey Theatre, Inc., v.Flynn, 110 N.J. Eq. 160; 159 Atl. Rep. 408; State v. Murzda,116 N.J. Law 219; 183 Atl. Rep. 305; American League, c., v.Eastmead, 116 N.J. Eq. 487; 174 Atl. Rep. 156; State v.Berger, 126 N.J. Law 39; 17 Atl. Rep. 2d 167; Hunter v.Teaneck Township, 128 N.J. Law 164; 24 Atl. Rep. 2d 553.
There is ample authority for the proposition that valuable property rights will be protected by injunction from damage or destruction, threatened or resulting, from the arbitrary acts of officials acting without due process of law.
As was stated in Ruty v. Huelsenbeck, supra:
"It would be intolerable if the operation of any business might be interfered with because some police officer came to the conclusion that the business was being operated in violation of the law. Such a condition would result in a government of men, not of law."
In S. R. Amusement Corp. v. Quinn, 136 N.J. Eq. 420;38 Atl. Rep. 2d 571, the court exhaustively analyzed the cases in which injunction was refused for alleged interference with property rights by public officials. It was there pointed *Page 522 
out that in the cases where such injunction was refused the complainants were (1) admittedly violating the criminal statutes, (2) it was too plain for argument that the mechanical devices involved were gambling devices, or (3) that the doctrine of clean hands barred them from relief in this court.
The violations in the case sub judice are not criminal but rather penal. The first two reasons above set forth which would bar complainants from relief are not here applicable. The doctrine of clean hands may, however, be pertinent. It becomes necessary to determine, therefore, whether their conduct is so patently violative of the ordinance in question and their property rights so clearly absent as to bar them from the relief sought, on the theory that they are not before this court with clean hands.
The complainants not only base their right to hawk or peddle on the beach upon the provisions of the Revised Statutes above cited, but also on the interpretation of that statute as found inStrauss v. Bradley Beach, 117 N.J. Law 45; 186 Atl. Rep. 681;
affirmed, 118 N.J. Law 561; 194 Atl. Rep. 160. In that case there was involved an ordinance of the Borough of Bradley Beach which prevented all hawking or peddling within its corporate limits. Upon a certiorari contesting the arrest and conviction of a veteran for violating the terms of this ordinance the court said:
"There is no doubt we think of the purpose of the statutes. It was to class veterans of the various wars as a body and to entitle them to a privilege of peddling throughout the state regardless of the action of municipalities, whether such action took a prohibitive form or a regulative form. The statute is applicable to the state generally, making no exceptions, and if in conflict with a municipal ordinance the latter must cease to be effective."
The ordinance was again considered in N.J. Good Humor, Inc., v. Bradley Beach, 123 N.J. Law 21; 7 Atl. Rep. 2d 824, reversed in 124 N.J. Law 162; 11 Atl. Rep. 2d 113. In this latter case the direct question here posed was not raised.
The defendants argue that the case of Strauss v. BradleyBeach, supra, is not applicable to their situation for the reason *Page 523 
that that case deals with an entire or complete prohibition against hawking or peddling anywhere within the corporate limits of the municipality and that the ordinance itself in N.J. GoodHumor, Inc., v. Bradley Beach, supra, was held to be an unreasonable exercise of the police power and therefore ultravires, and that the conclusion to be drawn from such a situation is that in any event the ordinance itself was void, and it was of no moment whether an alleged violation was occasioned by a veteran or a non-veteran. If defendants are prevented from passing or enforcing an ordinance such as is now in question, then no municipality would have any power or authority to regulate the hawking or peddling by such veterans. This conclusion seems inescapable in view of the rationale of the premise.
It must be conceded that the prohibition in Ordinance No. 422, although it may be considered regulatory in that it prevents hawking or peddling in only a portion of the municipality, is as to that section of the municipality, prohibitive. In view of the statement in Strauss v. Bradley Beach, supra, that the privilege granted to veterans could not be abrogated by an ordinance whether "prohibitive * * * or * * * regulative," it is of no consequence whether the provision is prohibitive or regulative. The same result occurs, i.e., the refusal to permit veterans to hawk or peddle, and this the borough is powerless to do.
In view of the fact that the statute sub judice has been interpreted as vesting a right to persons of a named class,i.e., certain war veterans, to hawk and peddle anywhere within the corporate limits of a municipality without any interference, and in further view of the fact that these complainants are admittedly members of that class, it cannot be said that they are before this court with unclean hands. They have a property right which should be protected from damage or destruction by municipal officers or employees through extra-legal or illegal interference upon the mere claim that the business is illegal. The case made by complainants seems to "exhibit a right free from doubt or reasonable dispute." Allman v. United Brotherhood ofCarpenters, c., 79 N.J. Eq. 150; 81 Atl. Rep. 116. *Page 524 
The temporary restraint prayed for will be granted. The defendants, however, will not be restrained against proceeding with the trial of the complainants now pending nor any further proceeding under due process of law in accordance with the terms of Ordinance No. 422 of the City of Wildwood and the laws of this state.